Stanley WRIGHT, William Richards, Trazawell Franklin, Jr., Douglas Wayne Waller, Charles Freeman, Jr., John Parker, and Floyd Nichols, Plaintiffs,

v.

TEXAS SOUTHERN UNIVERSITY, a Public Body Corporate, H. Hadley Hartshorn, Augustus Palmer, Everett O. Bell, Members of the Adm. Executive Committee, in Lieu of the President, Defendants.

No. 67–H–694.

United States District Court
S. D. Texas,
Houston Division.

Sept. 15, 1967.

Weldon H. Berry, Ned Wade, Thomas H. Routt, J. Harold Brooks, Houston, Tex., Robert L. Carter, Barbara A. Morris, New York City, and Herbert O. Reid, Washington, D. C., for plaintiffs.

Crawford C. Martin, Atty. Gen. of Texas, by Pat Bailey, Asst. Atty. Gen. of Texas, Austin, Tex., for defendants.

SINGLETON, District Judge.

*Memorandum and Opinion*

Plaintiffs, eight former students of Texas Southern University, filed the instant suit on September 8, 1967, alleging that they were being denied admission to the University in violation of their constitutional rights. In general terms, plaintiffs alleged that they were being denied admission because they were suspended at the end of the Spring term for their participation in several peaceable assemblies protected by the First Amendment. Plaintiffs further alleged that their suspension was imposed in violation of the due process clause of the Fourteenth Amendment because they were not given notice and some opportunity for a hearing on the grounds for their suspension. Jurisdiction was invoked under 28 U.S.C. § 1343(3) (1966) and 42 U.S.C. § 1983 (1966). On September 11, this Court issued a temporary restraining order, commanding defendants to permit plaintiffs to register at Texas Southern pending a hearing on the merits. A hearing was held on September 13, 1967, and at its close, defendants moved this Court to dismiss the action and dissolve the restraining order. After giving careful consideration to the evidence adduced at the hearing and weighing it in light of the applicable authorities, I have concluded that the motion should be granted, and *should be granted as against each plaintiff.*

The First and Fourteenth Amendment questions raised by the pleadings of the plaintiffs Franklin, Waller, Nichols, Parker, and Freeman need not be resolved, for the action of the University officials in denying these plaintiffs admission rests also upon a different and unassailable ground than that alleged in the complaint. It has long been the law that where a case can be decided without passing on a serious constitutional issue, the federal courts will refuse to pass on it. See Clay v. Sun Insurance Office Ltd.; 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960). A constitutional issue should only be determined when it is necessary for the disposition of a case. The obvious reasons which support this proposition are particularly compelling in a case such as the instant action where this Court is asked to delve into the manner in which officials of a state university have exercised their considered judgment in attempting to keep order on campus and guarantee an education to the students of the institution.

The undisputed evidence produced at the hearing shows the above mentioned plaintiffs to be scholastically ineligible for admission into Texas Southern for the Fall term. Plaintiffs Waller, Nichols, Parker, and Freeman failed each course for which they were enrolled in the Spring term, while plaintiff Franklin failed 12 of the 13 hours for which he was enrolled. Under the rules and regulations of the University, which are applicable to all Texas Southern students alike, these plaintiffs were subject to mandatory suspension until January, 1968. Counsel for plaintiff has not contended that suspension on this ground violates plaintiffs' constitutional rights. Indeed, no tenable contention could be made on this point. NO STUDENT HAS A CONSTITUTIONAL RIGHT TO REMAIN IN ATTENDANCE AT A PUB-

LIC UNIVERSITY IRRESPECTIVE OF HIS ACADEMIC PERFORMANCE. Therefore, since these plaintiffs would not be entitled to admission for the Fall term even if they proved the truth of their allegations, they present to this Court no substantial federal question which is presently justiciable.

As to the remaining plaintiffs, Wright, Richards and Lowe, this Court must reach and decide the questions presented concerning notice and an opportunity for a hearing before the University official responsible for student discipline. As the plaintiffs correctly point out, Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1960), announces the applicable law for this Circuit and holds that a student must be given notice and an opportunity for a hearing before he can be suspended from a state university on grounds of misconduct. However, the Dixon case is not squarely in point on the issues regarding notice and hearing *as they are raised in this case*. In the words of the Dixon court, "[t]he evidence clearly shows that the questions for decision does not concern the sufficiency of the notice or the adequacy of the hearing, but is whether the students had a right to any notice or hearing whatever before being expelled." *Id.* at 154. In the instant case, these issues which were largely left undecided in Dixon are the precise issues which have crystallized from the evidence adduced at the hearing on September 13.

Dean Jones of Texas Southern is charged with the responsibility of administering student discipline. The Texas Southern University Student Bulletin, which is made available to all students, sets out the fact that the Dean is in charge of disciplinary matters. Also, disciplinary procedures involving his office are made available each semester in mimeograph form to all students and are published at the beginning of each semester in·the student newspaper.

Concerning the plaintiff Wright, Dean Jones testified that on March 27, 1967, it was reported to him that Wright had violated one of the University regulations. On April 18, during a period of serious unrest and turbulence on the campus, Dean Jones stated that he *personally* observed Wright on the campus after curfew hours.[1] He stated that he confronted Wright and a companion and asked them to leave, but that they refused to do so. He then asked Wright to come to his office to talk with him about the incident. Wright never came. Later, Dean Jones made attempts to contact Wright by mail. He could find no mailing address, although each student was required by University regulations to keep the school informed of his mailing address and any changes thereof. Dean Jones also went to Wright's father to inquire about Wright's address, but was told by the father that he did not know himself. Wright voluntarily withdrew from the University on May 2. He was notified by certified mail on or about May 27 that he would not be permitted to reenter Texas Southern.

Concerning the plaintiff Richards, Dean Jones testified that on January 18, 1967, he personally called at the dormitory where Richards resided to request a conference concerning a reported violation of University regulations. A conference with Richards was held, and Richards was told that he would be under observation for the remainder of the semester. On April 30, 1967, Dean Jones *personally* observed Richards exhorting

---

[1]. Application of the notice-and-hearing requirement to colleges and universities presents somewhat of a theoretical dilemma when the University official in charge of student discipline is a witness to a student's misconduct. It is my opinion, however, that the University official is not disqualified from making the determination of what disciplinary action is to be taken, if any. I think that the procedure followed by Dean Jones of summoning the student to his office, demanding an explanation for the student's conduct, and deciding whether he is to be disciplined is, in the context of the campus, a procedure consistent with due process.

students to block the entrance way to a campus building so as to prevent entry by the faculty and students alike.[2] A letter was then sent to Richards asking that he report to the Dean for a conference, but it was returned undelivered. Although Richards had changed his mailing address, he, like Wright, failed to notify the University. Richards was notified after the close of the Spring term that he would not be permitted to re-enter Texas Southern.

I think this evidence clearly demonstrates that diligence was exercised in attempting to give proper notice to both Wright and Richards. Wright was given personal notice at a time when he was in the act of violating a valid University regulation. Certainly that situation itself should have impressed him with the necessity of compliance with the Dean's command to visit his office. Moreover, written communications were sought to be delivered to both Wright and Richards. Only because of their failure to comply with a valid University regulation was delivery of the communications unsuccessful. The Dean of Students, I am convinced, exercised his best efforts to inform these two students of the nature of the University's complaints against them. *I do not think more is required.* To now order defendants to reinstate these plaintiffs subject to holding a hearing on their grounds for suspension would, it seems to me, be tantamount to condoning the irresponsible attitude exhibited by these plaintiffs. It would be unreasonable indeed for this Court to hold that a University could not take disciplinary action against students who could not be contacted although diligent attempts were made, particularly where their whereabouts were not disclosed to the University in violation of a valid regulation. In a day where the population of some of our state colleges and universities now approaches that of small cities, where there is a decided increase in off-campus residency, and where there are in many instances no attendance rules imposed on the students, to require more of university officials than was done here, would in many cases render university officials 'powerless to command or rebuke the fanatic, the irritant, the malingerer, the rabble rouser.'

Plaintiff Lowe was allowed leave to join as a party plaintiff on September 12. After leave was granted, he joined in the allegations of the other plaintiffs, thereby limiting the scope of his own cause of action. The undisputed evidence shows that Lowe was given notice to report to Dean Jones' office and that he did. His conduct during the Spring semester was discussed with Dean Jones, and he was given the opportunity to speak in his own defense. Lowe was then referred by Dean Jones to the Office of the President, and Lowe then discussed with the President the University's complaints against him. After this, Dean Jones and the President conferred and arrived at their decision to deny Lowe re-admission to Texas Southern.

I find no evidence to indicate that the hearing afforded Lowe was inadequate. Lowe has offered no evidence concerning the hearing, and on such a record I do not think that this or any other court should substitute its judgment for that of the proper University officials. From what appears of record, Lowe was given a fair opportunity to show his innocence and explain his conduct. This was sufficient.

In conclusion, with respect to the activities of each of these students, as presented to this Court, the constitutional umbrella should afford no protection to those who choose to go out in the rain bareheaded.

Therefore, defendants' motion to dismiss will be granted as to all plaintiffs. Counsel for defendants will draft and submit an appropriate order.

2. See note 1 *supra*.